UNITED STATES, Appellant

v

HARRY THOMAS, Jr., Private, U. S. Army, Appellee

13 USCMA 163, 32 CMR 163

No. 15,734

June 22, 1962

*Captain Stanley M. Wanger* argued the cause for Appellant, United States. With him on the brief was *Major Francis M. Cooper.*

*First Lieutenant Robert L. Brosio* argued the cause for Appellee, Accused. With him on the brief was *Captain Jerome D. Meeker.*

Opinion of the Court

KILDAY, Judge:

Under the provisions of Article 67 (b) (2), Uniform Code of Military Justice, 10 USC § 867, The Judge Advocate

General of the Army certified this case on the following issue:

"WAS THE BOARD OF REVIEW CORRECT IN DISMISSING THE CHARGES ON THE BASIS THAT THE APPELLANT WAS MENTALLY IRRESPONSIBLE AT THE TIME OF THE OFFENSES WITHOUT FIRST DETERMINING THE APPELLANT'S MENTAL CAPACITY AT THE TIME OF APPELLATE REVIEW AND AT THE TIME OF TRIAL?"

As the sufficiency of the evidence at the trial to sustain the charges is not in dispute, an extended statement of facts is not deemed essential. Suffice it to say that the accused was found guilty of disrespectful language toward a noncommissioned officer, contemptuous conduct toward a noncommissioned officer, willful disobedience of a lawful order of a noncommissioned officer and two offenses of behaving with disrespect toward his superior officer, in violation of Articles 91 and 89, Uniform Code of Military Justice, 10 USC §§ 891 and 889. He was sentenced to a bad-conduct discharge, total forfeitures, two years' confinement at hard labor, and reduction to the enlisted grade of E-1. The convening authority approved the sentence.

Following receipt of the record of trial in the office of The Judge Advocate General, appellate defense counsel requested a sanity board for the accused.

Pursuant thereto, a board of medical officers was appointed at the United States Disciplinary Barracks, Fort Leavenworth, Kansas. In the report of its proceedings, the board of medical officers unanimously found that because of an existing mental defect, disease, or derangement, namely schizophrenia, the accused, at the time of the offenses, was completely deprived of the ability to adhere to the right and was not capable of forming the requisite specific intent for the offense of disobedience of orders; that at the time of trial he did not possess sufficient mental capacity to understand the nature of the proceedings against him and intelligently to cooperate in his own defense; and that the accused, at the time of the board's diagnosis, did not possess sufficient mental capacity to understand the na-

ture of the proceedings against him and intelligently to cooperate in his own defense.

In view of that diagnosis, which was based in part on a clinical history of hospital treatment for paranoid schizophrenia prior to the alleged offenses herein involved, the board of review concluded that a reasonable doubt existed as to accused's mental responsibility for all of the alleged offenses. It therefore found the approved findings of guilty and sentence incorrect in law and in fact, set them aside, and dismissed the charges.

In a motion for reconsideration, the Government requested the board of review to make express findings with respect to the accused's mental capacity at both the time of appellate review and at time of trial. The Government also urged that if the board of review concluded the accused was mentally incapacitated at time of appellate review but possessed the requisite mental capacity at time of trial, the board must stay the proceedings until his mental capacity be restored. It is from the board's denial of the Government's motion that the certified question arises.

Before this Court the Government argues that the board of review, by failing first to make express findings as to accused's mental capacity at both time of appellate review and at the time of trial, erred in that it did not comply with previous decisions of this Court. According to the Government, if the board had made such findings and had determined that the accused was mentally incapacitated at time of appellate review, then the board lacked lawful authority to proceed further and to consider his mental responsibility at time of the offenses. It is the Government's contention that the board of review possessed authority to consider the accused's mental responsibility only if the board first determined that he was mentally capable at time of appellate review.

We will first address ourselves to the question of the jurisdiction and authority of the board of review as it applies in cases involving the sanity of the accused.

**165**

Paragraph 124, Manual for Courts-Martial, United States, 1951, provides that:

"After consideration of the record as a whole, if it appears to the convening authority or higher authority that a reasonable doubt exists as to the sanity of the accused, he should disapprove any findings of guilty of the charges and specifications affected by such doubt and take appropriate action with respect to the sentence . . . . [A]ction . . . [is to be taken] whenever it appears from the record of trial or otherwise that further inquiry as to the mental condition of the accused is warranted in the interest of justice, regardless of whether any such question was raised at the trial or how it was determined if raised."

In United States v Burns, 2 USCMA 400, 9 CMR 30, this Court established that a board of review is a "higher authority" within the meaning of the above-cited paragraph.

In subsequent decisions dealing with the mental condition of an accused, we affirmed our position as to ▮▮▮▮▮ the authority and jurisdiction of a board of review to consider and take appropriate action on such an issue. See United States v Korzeniewski, 7 USCMA 314, 22 CMR 104; United States v Bell, 7 USCMA 744, 23 CMR 208; United States v Jacks, 8 USCMA 574, 25 CMR 78; United States v Roland, 9 USCMA 401, 26 CMR 181. See also United States v Bunting, 6 USCMA 170, 19 CMR 296. And see United States v Williams, 5 USCMA 197, 17 CMR 197.

In view of the Government's contention that these decisions expressly limit the board's authority by directing the order in which it may proceed in its considerations, we are constrained to examine them in this light and determine their import on and particularity to the present certification.

There are three distinct stages when the issue of the sanity of an accused, if reasonably raised, should ▮▮▮▮▮ be the subject of inquiry; that is, (1) at time of the commission of the offense, (2) at time of trial, and (3) at time of appellate review. This Court has had occasion to express itself with reference to each of these instances.

In United States v Korzeniewski, supra, we held that appellate review is tolled when an accused is found insane at time of review. Subsequently, in the second appeal of *Bell,* supra, we explained this holding by pointing out it is premised on the fact that such an accused does not possess sufficient mental capacity to understand the nature of the appellate proceedings against him and to cooperate intelligently in his defense. In both of these cases we stated that the board of review must stay consideration of the merits of the case and must await such time as the accused possesses the requisite mental capacity before proceeding further.

This Court in *Jacks,* supra, having considered this ruling as being founded upon considerations of humanity and as a protection for accused where he is unable to do so himself, stated that both its purpose and the ends of justice would be perverted were it turned into a barrier to prevent consideration of the accused's mental competence originally to stand trial. Accordingly, we held that since this was a question separate from, and preliminary to, the accused's guilt or innocence, it could appropriately be inquired into by the board of review.

The common denominator affecting the ultimate decision in each of the above-cited cases is readily identified as the mental competency of the accused to assist in his defense at time of trial or appellate review. The question of mental responsibility at time of offense was either not raised therein or had been previously argued before the court. In United States v Williams, supra, however, we were concerned with the handling of both of these issues at trial level, and we ruled there that the issue of mental competency to stand trial is the first order of business at that level and should be disposed of before the case reaches the point where mental responsibility at time of offense becomes an issue. *Williams* is not precisely in point because in the case at bar

neither issue was raised on the merits at trial level.

Mental responsibility at time of offenses was likewise decisive in *Bunting, supra.* There we held that the board of review, after concluding that a reasonable doubt existed as to accused's sanity at time of commission of offenses, was competent to so decide and did not err in setting aside the finding and dismissing the charges. In *Bunting,* however, this issue was completely examined at trial and there was no question of accused's competency to stand trial or to assist in appellate review. Moreover, the board there ruled on the basis of the evidence of trial and found no need to launch appellate inquiry into the matter.

Not until the *Roland* case, supra, do we find among our decisions the issue of mental responsibility at time of offenses being presented to the board of review in a manner almost similar to the present case. There, as in this instance, the issue had not been raised at trial. There, too, the board of review had before it a report of a sanity board which examined accused subsequent to findings and sentence and found accused was not mentally responsible at time of the offense and not competent to assist in his defense at trial. The sanity board did not comment on Roland's competency to assist in his appellate review. Also before the board of review in that instance, however, was a report by the Surgeon General concluding that accused was sane both at time of offense and at trial. The board of review, in *Roland,* in light of these conflicting reports and other factors revealed by the record of trial, concluded that the accused's claim of insanity should be rejected, and affirmed the conviction and sentence.

The instant case differs from *Roland* in that here we have no contrary opinion as to accused's sanity by the Surgeon General, and the sanity board made an additional finding that this accused was incompetent to assist in appellate review. Contrary to the decision in *Roland,* the board of review in the case at bar found the accused mentally irresponsible at time of offense and dismissed the charges.

This Court, in affirming the board's action in the *Roland* case, held that while neither the reports of the sanity board nor of the Surgeon General were admissible as evidence, there were no objections to the board's considering them so long as they were used for the *limited purpose of determining if the issue of sanity was raised.* The board of review could not have used them otherwise, for, although a report of a sanity board may be looked upon as an official record or business entry, as those phrases are commonly understood, the report is not admissible as evidence under those authorized exceptions to the hearsay rule since it is obviously a statement of opinion and not of fact. The rule of evidence and the reasoning therefore are quite accurately expressed in the Manual for Courts-Martial, United States, 1951, paragraph 144*d*:

". . . entries in a report of a board of medical officers (psychiatrists) as to the mental condition of a certain individual are not admissible to prove such mental condition, for a diagnosis of a mental condition involves opinion to such a degree as to require that those making such a diagnosis be subject to cross-examination. See 122*c*."

Paragraph 122*c* of the Manual provides that:

"The issue of the sanity of the accused is one of fact, and the modes of proof and rules of evidence with respect to this issue are, generally, those prescribed in chapter XXVII.

. . .

"As in the proof of other matters, evidence should be presented by the testimony of witnesses in open court, depositions (145*a*), stipulated testimony, or documentary evidence.

"So much of the report of a board of medical officers or any other medical record as pertains to entries of facts or events which are properly admissible under the official records or business entry exceptions to the hearsay rule (144*b, c*) may be re-

167

ceived in evidence. The opinions as to the mental condition of the accused contained in such a report are not within these exceptions to the hearsay rule. They may be received in evidence by stipulation, and in a proper case, as memoranda of past recollections recorded (146a). Such a report or any other pertinent matter, although not necessarily admissible in evidence, may nevertheless be examined by the law officer of a general court-martial or the president of a special court-martial for the limited purpose of determining whether further inquiry into the mental condition of the accused should be made by the court; and, in the event a ruling is objected to by any member, the court may also examine the document for the same limited purpose."

The question of accused's mental competence to assist in his defense at trial or at the time of appellate review are interlocutory matters and the authority of the board of review to deal with them has been previously spelled out. See *Korzeniewski, Bell,* and *Jacks, supra.* The question of mental responsibility at time of offense, however, is different in that, far from being interlocutory, it is a factual question which concerns the guilt or innocence of the accused and goes to the merits of the case. Insanity is not a mitigating circumstance, it is a complete defense to a crime. As such, it is a matter which can be considered within the purview of authority of the board of review as provided by Article 66(c), Uniform Code of Military Justice, 10 USC § 866. United States v Burns, supra.

That it is a new matter and outside the transcript of this trial is uncontrovertible, as the only mention of mental competency or responsibility in the instant case was the insertion into the record by trial defense counsel of a psychiatric report and this by way of mitigation on sentence and not on findings. However, as we stated in *Burns,* while "a trial *de novo* before the board of review is not contemplated

. . . insanity is given a preferred rating." See also United States v Schick, 6 USCMA 493, 20 CMR 209. This is not to be considered as opening the door to "all other issues affecting guilt or innocence" as argued herein by the Government.

Since it is vested with such authority, we find no fault with the board of review's action in considering the issue of accused's mental responsibility at time of offense without first making a determination as to his competence to assist at trial or appellate review. It is within the province and sound judgment of the board to consider any one or all of these three stages and we find no Code or Manual provision or decision of this Court establishing the order in which the board must act. Cf. United States v Williams, supra. And cf. United States v Schick, supra, where evidence on sanity was adduced at trial and our holding was clearly denominated *sui generis.*

It is the board's action in dismissing the charges without the issue of insanity having been submitted to the finders of fact and, as required by paragraph 144d of the Manual, "subject to cross-examination," which gives us pause. While, as noted above, the board of review has authority to make findings of fact, such findings must, of necessity, be based upon evidence. The prosecution and society are entitled to meet the defense testimony, examine defense witnesses, and offer testimony in rebuttal.

Undoubtedly, the board was influenced by its decision in United States v Patterson, CM 404570, decided January 18, 1961. There, in an exactly similar situation as prevails here and faced with "the government's virtual concession," the board concluded "that a reasonable doubt exists as to the sanity of the accused at the time of the offenses and at the time of trial," found the approved findings of guilty and sentence incorrect in law, set them aside and dismissed the charges. *Patterson,* however, was not referred to this Court

for action and it can not be viewed as controlling in this instance.

We hold that it was proper for the board of review to consider whether the issue of the accused's mental responsibility at time of offenses was raised by the data before it, and to take appropriate action without first making a decision as to his mental competency to stand trial or to assist in appellate review. However, since this issue has not been submitted to the triers of fact, nor subjected to cross-examination, the board erred in dismissing the charges. By remanding this case for appropriate action in light of this opinion, the rights and interests of the accused, society, and the Government will be preserved.

From the posture of this record, it appears there may be no disagreement concerning accused's sanity. In the event there is no desire to contest the accuracy of the psychiatric findings, and the parties are agreeable, the accused's mental condition may be submitted to the board of review by proper means, and the matter disposed of by it upon remand.

Accordingly, the decision of the board of review is reversed and the record is returned to The Judge Advocate General of the Army for action not inconsistent with this opinion.

Chief Judge QUINN and Judge FERGUSON concur.