**UNITED STATES**

v.

**Paul D. PHILLIPS, 570 94 5185, Electronics Technician (Communication) Seaman Apprentice (E–2), U. S. Navy.**

**NMCM 78 0769.**

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 23 March 1978.

Decided 19 May 1982.

LT Richard K. Delmar, JAGC, USNR, Appellate Defense Counsel.

LT Wm. Eric Minamyer, JAGC, USNR, Appellate Government Counsel.

Before CEDARBURG, C. J., and GORMLEY and MAY, JJ.

CEDARBURG, Chief Judge:

On 23 March 1978 appellant was tried by special court-martial and found guilty of eight specifications under Article 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892, alleging possession, sale, and transfer of heroin on two separate occasions. An express request for appellate representation was signed by appellant and attached to the record of trial, together with a special power of attorney authorizing appellate defense counsel to accept service of this Court's decision on behalf of Seaman Apprentice Phillips. Appellant's case was submitted to this Court without specific assignment of error. Findings and sentence were affirmed on 20 July 1978. On 9 August 1978 service of this Court's decision and the promulgation package was attempted as contemplated by JAGMAN, § 0133d(3); however the receipt of service apparently was signed by appellant's father. Actual service on appellant was never effected. Based upon the earlier inadequate service, then-appellate defense counsel, Lieutenant Fink, acknowledged receipt of a copy of the Navy-Marine Court of Military Review decision on 22 February 1979, pursuant to the special power of attorney executed by appellant and JAGMAN, § 0133d(4)(a).

Appellant, in the interim, had been severely injured in an automobile accident on 7 October 1978, resulting in the physical and mental handicaps which form the basis for appellant's present motion to dismiss. Those injuries prompted appellant's parents to successfully petition the California courts on 6 March 1979 for appointment as co-conservators over appellant's person and estate. Two months after the traffic accident, appellant was described as alert and able to follow some nonverbal requests. He still was unable to speak and, according to the therapist's evaluation, was considered vocationally handicapped with no useful skills. Following extensive testing, a Physical Evaluation Board report, dated 11 February 1981, concluded that "the patient is intellectually handicapped, incompetent to manage his own affairs without considerable help . . . [and] unable to communicate."

Appellate defense counsel now moves to dismiss pursuant to Rule 23, Rules of Practice and Procedure for the Courts of Military Review, 10 MJ LXXXVIII, based upon appellant's present mental incapacity. Appellant's motion raises two distinct issues: (1) whether appellant's mental incompetence precludes the Navy-Marine Corps Court of Military Review from promulgating a decision reached by this Court prior to appellant's traffic accident and ensuing handicap, and (2) whether this Court may effectively direct service of its 20 July 1978 decision either on appellant or a properly authorized representative.

## I

Prior to the 1969 revision of the *Manual for Courts-Martial*, the incompetency of an accused arising after trial was not considered an impediment to review by the several boards of review. Thus in *United States v. Bell*, 6 U.S.C.M.A. 392, 20 C.M.R. 108 (1955), the Court of Military Appeals held that an Army board of review might properly consider an appeal where the accused, after trial was diagnosed as suffering from a chronic psychotic illness. In *Bell*, the issue of insanity had not been raised either during the Article 32, UCMJ, 10 U.S.C. § 832, investigation or at trial, and apparently nothing suggested a lack of mental responsibility on the part of the accused. A subsequent medical evaluation determined that while appellant had the requisite mental capacity at the time of the offense and throughout his trial, he now manifested symptoms of mental disorder. Those findings of incompetency clearly preceded the decision of the Army board of review. In recognizing the fact-finding authority vested in the intermediate tribunal, the opinion in *Bell* concluded that appellant's mental impairment would not represent a substantial obstacle to presentation of an effective appeal or full development of the insanity issue. The Court indicated that abatement of review proceedings would be of little benefit to appellant.

The opinion in *Bell* represented an expansion of the earlier decision in *United States v. Washington*, 6 U.S.C.M.A. 114, 19 C.M.R. 240 (1955). In that case, involving a capital offense, the Court of Military Appeals acknowledged its jurisdiction to review the conviction of a service member diagnosed as insane following announcement of the board of review decision. As the Court noted, "although there must be held to be jurisdiction to review the record of trial of an insane accused ... we are sure that an appellate court possesses the broadest sort of discretion in its exercise." *Washington, supra* at 123, 19 C.M.R. at 249. Recognizing the "substantial injustices and inconveniences" which would accompany a lack of

jurisdiction, the decision concluded that all substantial rights accorded the incompetent accused would be safeguarded, given the Court's authority to review issues of law only. The facts elicited at trial remained preserved in the record and the right to petition for new trial would be tolled until appellant managed to regain his mental health. Presuming assignment of competent and diligent appellate counsel, post-trial review would not be barred or adversely prejudice the accused.

In a less expansive concurrence, Chief Judge Quinn argued that incapacity on the part of an accused would not bar the Court of Military Appeals from completing its review. The Chief Judge reiterated that only issues of law were subject to the Court's consideration and thus none of the standard bases for staying proceedings involving an insane accused would be applicable. Moreover, the concurring opinion noted,

> Justice both to the Government and the accused requires that this appeal be completed. If the conviction cannot legally be sustained, fairness to the accused requires that it be set aside, and that he be restored to all rights and privileges of which he may be deprived by reason of the sentence of the court-martial. On the other hand, if the conviction is legally correct, the Government should have the right to proceed to the point of finality. If it is deprived of that right, the accused may be inordinately enriched in financial and other benefits at the expense of the people.

*Washington, supra* at 126, 19 C.M.R. at 252 (Quinn, C. J., concurring). Under the unique sequence of events in the instant case, Chief Judge Quinn's observations seem particularly valid.

The specific holding in *Bell* was rejected in *United States v. Korzeniewski*, 7 U.S.C.M.A. 314, 22 C.M.R. 104 (1956), where the Court of Military Appeals found that the intermediate tribunal had acted on an appeal while the accused clearly was incompetent.[1] The opinion noted that the board of

---

1. Following its decision in *United States v. Korzeniewski*, 7 U.S.C.M.A. 314, 22 C.M.R. 104

(1956), the Court of Military Appeals specifical-

review had been apprised of appellant's psychotic condition well before it announced its decision. Relying upon the analysis put forth in the concurring opinions in *Washington*, the Court concluded,

> that a board of review, with its fact-finding powers, cannot proceed with the review of an insane accused. The appellate review of such a case is tolled. If sanity is subsequently restored, review at that level may then be completed.

*Korzeniewski, supra* at 317, 22 C.M.R. at 107.

The bar to intermediate appellate review enunciated in *Korzeniewski* was formalized in the revisions to paragraph 124, *Manual for Courts-Martial, 1969 (Rev.)* (MCM). Incorporated in the changes was the requirement that,

> When further inquiry results in a determination that the accused lacks the mental capacity to understand the review proceedings, a conviction may not be approved or affirmed under Article 64, 65, and 66 until the accused regains the requisite mental capacity.

From their analysis of appellate decisions, the drafters concluded that the fact-finding responsibilities vested in courts of military review would bar consideration of a record where appellant was found incompetent during the appeal process. The intermediate court retains jurisdiction and might exercise their fact-finding power to benefit the appellant. Nonetheless, a conviction could not be affirmed or approved while the incompetent status continued. *Analysis of Contents, Manual for Courts-Martial, United States, 1969, Revised Edition,* Department of the Army Pamphlet No. 27–2, July 1970.

Similar reasoning was applied in *United States v. Shepard,* 41 C.M.R. 448 (A.C.M.R. 1969), where a medical board determined that appellant had been suffering from a mental defect both at the time of trial and proceedings before the appellate court.

Based upon the medical evaluation, appellate defense counsel moved to reopen the case. In granting the motion, the Army court noted that the evidence failed to establish beyond a reasonable doubt that appellant had sufficient mental competency to understand the nature of the appellate proceedings and to cooperate in the efforts of his counsel, both at the time of review proceedings and when notified of the appellate decision. In light of the medical evaluation, the Army court elected to set aside the findings and sentence, and ordered the charges dismissed.

Analysis of the above precedents clearly implies a restriction on this Court's review authority in those instances where incompetency is discovered subsequent to trial and prior to a decision on review. The revisions to paragraph 124, MCM, and the most recent appellate decisions emphasize the fact-finding role of the courts of military review. The presumption is that the incompetent appellant will be unable to assist his appellate counsel in developing additional facts which, in turn, might justify reversal. Without the participation, or potential participation, of appellant, the right of appeal becomes diminished.

A strong argument may be made that the facts in the instant case are inapposite to recent appellate decisions and the concerns underlying the 1969 revisions to paragraph 124, MCM. Appellant's mental incapacity clearly arose after completion of the Court's review and the attempted service on appellant. Moreover, the cause of the handicap was the unforeseeable traffic accident occurring on 7 October 1978, with no indication of psychotic or abnormal behavior prior to that date. On a more practical level, the extent of appellant's active participation in the appellate process before this Court, prior to his incapacitation, seems limited, if not nonexistent, given appellate defense counsel's submission of the record without specific assignment of error.

---

ly repudiated the earlier holding in *United States v. Bell,* 6 U.S.C.M.A. 392, 20 C.M.R. 108 (1955). *United States v. Bell,* 7 U.S.C.M.A. 744, 23 C.M.R. 208 (1957). Emphasizing the potential assistance which an accused might

provide in perfecting an appeal before a board of review, the Court concluded that its initial opinion in *Bell* established a rule which was unsound and which would work a substantial injustice.

The record of trial indicates that appellant was fully informed of his rights before this Court and expressly requested the assistance of appellate counsel. Appellant plainly had the requisite mental capacity at the time of trial and prior to his traffic accident; a period which encompassed review by this Court and the attempted service of the promulgation package. In this respect, the "review proceedings" provided for in Articles 64, 65, and 66, UCMJ, 10 U.S.C. §§ 864, 865, 866, had been completed prior to the incident which resulted in appellant's incapacity. Distinguishing the facts in *Bell, Korzeniewski* and *Shepard,* this Court may reasonably conclude that this is a case of first impression. Reaffirming the earlier decision would not entail any infringement upon appellant's substantial rights before the Navy-Marine Corps Court of Military Review nor presume a restriction on the facts which this Court might have considered in initially reviewing the record in the instant case.

## II

■ Reaffirming this Court's earlier decision in the case *sub judice* may have little practical effect if service is precluded by appellant's existing mental condition. As construed by the Court of Military Appeals in *United States v. Larneard,* 3 M.J. 76 (C.M.A.1977), Article 67(c), UCMJ, 10 U.S.C. § 867(c), requires actual notice of a Court of Military Review decision accomplished by delivering a copy of the intermediate court decision personally to the accused. Rejecting a method of constructive service sanctioned by service regulations, the opinion in *Larneard* emphasized that the procedures for perfecting an appeal are governed solely by statutory authority. As the only statutory provision concerned with the procedure for initiating an appeal before the Court of Military Appeals, Article 67(c) would demand that the accused himself be served.

The only exception to the requirement of actual notice, which would also comport with Article 67(c), allows service on appellate defense counsel where the client has authorized counsel to act in his behalf.

*Larneard, supra* at 81. While the authorization need not be in writing, *United States v. Daly,* 4 M.J. 145 (C.M.A.1977), service on appellate defense counsel requires a preexisting attorney-client relationship. *Cf. United States v. Iverson,* 5 M.J. 440 (C.M.A.1978). Absent that agency relationship, personal service on appellant would be required.

The requirements for effective service established in *Larneard* have not been met in the instant case to date. Appellate Government counsel concedes that the attempted service at appellant's home of record was deficient where the receipt was signed by appellant's father and never subsequently acknowledged by Seaman Apprentice Phillips. Similarly, the alternative service on Lieutenant Fink was ineffective where made after the traffic accident of 7 October 1978. Appellant's mental incapacity as a result of his injuries extinguished any authority for accepting service which the special power of attorney vested in Lieutenant Fink or his assigned successors. California Civil Code § 2356(a).

Despite the previous ineffective attempts to provide appellant with notice, the Government's conclusion that service of this Court's 20 July 1978 decision is impossible seems incorrect. California statutes specifically provide that a court-appointed conservator may "defend actions and proceedings against the . . . conservatee." California Probate Code § 2462. More particularly,

If a guardian, conservator, or similar fiduciary has been appointed for a person, . . . process is ordinarily served by delivering a copy of the summons and the complaint to the guardian or conservator and also to the incompetent himself. Double service is required whether the incompetent resides within or outside this state. For good cause shown, the court in which the action is pending may dispense with delivery to the incompetent person. This exception permits the court to dispense with service on the incompetent when he is unable to comprehend the nature of the documents or would suffer serious mental harm as a result of such service.

50 Cal.Jur.3rd, *Process, Notice and Subpoenas*, § 51 (1979). *See* CALIFORNIA CIVIL CODE § 416.70. A similar provision is not included within the California criminal code; however, the duties and responsibilities of the conservator would seem sufficiently expansive to warrant service of process even in the criminal context. Significantly, Rule 4(d)(2) of the Federal Rules of Civil Procedure provides that in federal proceedings involving incompetents, service of process will be accomplished in the manner prescribed by the law of the state in which the service is made.

Alternatively, the issue of service may be resolved under Article 70, UCMJ, 10 U.S.C. § 870, which directs the Judge Advocate General to assign appellate counsel, as he deems appropriate, to duties in connection with the review of courts-martial. Noting that the service requirements in Article 67(c) should be interpreted realistically, the Court in *United States v. Bell, supra*, concluded that Article 70 would permit assignment of appellate counsel for purposes of accepting service in cases involving an incompetent accused. In this respect, the Court described appellate defense counsel's role as analogous to that of a guardian *ad litem.* The opinion noted the equivalent procedure within the federal system, which provides,

> Whenever an . . . incompetent person has a representative, such as a . . . conservator . . . the representative may sue or defend on behalf of the . . . incompetent person. . . . The court shall appoint a guardian ad litem for an . . . incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the . . . incompetent person.

Fed.R.Civ.P. 17(c).

In the context of the instant case, either of the above procedures—service on the California conservator or JAG-appointed counsel—appears permissible and, in fact, may be pursued concurrently. The restrictive language in paragraph 124, MCM, should not preclude the alternative method of service contemplated in *Bell*, for the issue of notice becomes relevant only after the Court of Military Review has completed all fact-finding. Appellant's incapacity would have no impact on the limited review available before the Court of Military Appeals, and thus service on appellant's court-appointed representative or duly authorized appellate counsel has no prejudicial effect.

Accordingly, we direct that service of our decision in this case, *United States v. Phillips*, N.C.M. 78 0769, decided 20 July 1978, be concurrently effected upon the present appointed appellate defense counsel, and the co-conservators of appellant's person and estate appointed by the Superior Court of California, who may exercise for appellant his right to petition to the Court of Military Appeals for review of our decision.

Judge GORMLEY and Judge MAY concur.