UNITED STATES, Appellee,

v.

Staff Sergeant Walter CORREA, Junior,
575–52–0027, United States
Army, Appellant.

CM 446255.

U.S. Army Court of Military Review.

30 Dec. 1985.

For Appellant: Captain Richard J. Anderson, JAGC (argued). Lieutenant Colonel William P. Heaston, JAGC, Major John E. King, JAGC, Captain Donna Chapin Maizel, JAGC (on brief).

For Appellee: Captain Laura G. Poston, JAGC (argued). Lieutenant Colonel Adrian J. Gravelle, JAGC, Lieutenant Colonel Larry D. Williams, JAGC (on brief).

Before YAWN, WILLIAMS and KENNETT, Appellate Military Judges.

## OPINION OF THE COURT

WILLIAMS, Judge:

Appellant was tried by a military judge sitting as a general court-martial on 18–21 June 1984. Contrary to his pleas, he was found guilty of one specification each of disobedience of a lawful command from his superior commissioned officer, larceny, assault with a dangerous weapon, and communication of a threat in violation of Articles 90, 121, 128, and 134, 10 U.S.C. §§ 890, 921, 928, and 934 (1982). Appellant was sentenced to a dishonorable discharge, confinement for 24 months, forfeiture of $390.00 pay per month for 24 months, and reduction to the grade of Private E–1. The convening authority approved the sentence.

Approximately twelve months after trial, appellant underwent psychological and psychiatric evaluation. The resulting evaluation reports, offered and admitted as defense appellate exhibits, indicate he suffers from post-traumatic stress disorder (PTSD) as a result of combat duty in Vietnam from

January 1969 to August 1970. He now asserts the evidence elicited at trial concerning his charged misconduct was so contrary to his normal behavior that the military judge erred by failing to inquire into his sanity. He also argues the post-trial diagnosis that he suffered from PTSD at the time of his misconduct requires, in the interests of justice, that the charges and specifications be dismissed. We disagree and affirm.

■ Military law gives special consideration to questions concerning an accused's sanity. *United States v. Triplett,* 21 C.M.A. 497, 45 C.M.R. 271 (1972); *United States v. Burns,* 2 C.M.A. 400, 9 C.M.R. 30 (1953); *United States v. Martin,* 19 M.J. 621 (A.C.M.R.1984). Thus, if reasonable doubt exists as to the mental responsibility of an accused for a charged offense, he cannot be legally convicted for that offense. Paragraph 120*b*, Manual for Courts-Martial, United States, 1969 (Revised edition), Change 3 (1980) [hereinafter cited as MCM, 1969]. The accused is presumed, however, initially to be sane and to have been sane at the time of the offense until evidence is presented to the contrary. Para. 122*a*, MCM, 1969. In other words, an issue concerning the accused's sanity must be raised before the presumption disappears.

■ Having examined the record of trial, we find no evidence which would have alerted the trial judge to a possible sanity issue. *See* para. 122, MCM, 1969. Civilian trial defense counsel never raised the issue. Moreover, despite the apparently unblemished prior disciplinary record of the appellant, there was nothing unusual about either the offenses or the evidence to distinguish him from numerous other soldiers over the years who, much to the surprise of their peers and superiors, have been caught after stealing government money over a long period of time. Nor is it so unusual that a soldier, because of voluntary intoxication and failure to control his temper, suddenly became involved in incidents which resulted in threats, assaults, or disobedience. At most, looking at the of-

fenses from the trial judge's viewpoint, appellant's conduct might indicate an "abnormality manifested only by repeated criminal or otherwise antisocial behavior." Para. 120*b*, MCM, 1969. Such an abnormality is not included in the terms "mental disease or defect." Para. 120*b*, MCM 1969; *United States v. Cortes-Crespo,* 13 M.J. 420, 422 (C.M.A.1982); *United States v. Frederick,* 3 M.J. 230, 234 (C.M.A.1977). Since "repeated criminality cannot be the *sole* [emphasis in original] ground for a finding of mental disorder ...," *United States v. Frederick,* 3 M.J. at 238, *citing United States v. Freeman,* 357 F.2d 606, 625 (2d Cir.1966), the trial judge did not err by failing to inquire *sua sponte* into appellant's sanity.

The critical issue here is whether the post-trial evaluations, rendered almost sixteen months after the latest charged offense, raise the issue of appellant's mental responsibility.

■ It is axiomatic that the matter of mental responsibility "can be examined on appellate review regardless of whether it was determined at trial...." *United States v. Norton,* 22 C.M.A. 213, 46 C.M.R. 213, 218 (1973), *citing United States v. Triplett,* 21 C.M.A. at 499, 45 C.M.R. at 273. Further, if "new information produced after trial 'raises an issue' concerning an accused's mental responsibility at the time of the offense, the affected charges may be dismissed or a new trial or rehearing may be directed upon appellate review." Para. 124, MCM, 1969; *United States v. Martin,* 19 M.J. at 622. In that respect, it is important to note that no issue concerning appellant's mental responsibility was litigated at trial. Thus, we are not required to determine the effect of "new" (meaning additional) information offered to supplement evidence of record already presented on the issue. *See United States v. Triplett,* 21 C.M.A. at 277, 45 C.M.R. at 277; *United States v. Martin,* 19 M.J. at 623. Instead, we "may only determine whether the 'new information' obtained after trial 'raises an issue concerning mental responsibility....' " *United States v. Rob-*

*erts,* 18 M.J. 192, 195 (C.M.A.1984) (Everett, C.J., concurring).

■ Applying this test, we are convinced the issue of appellant's mental responsibility has not been raised. "The post-trial psychiatric report is only one of many factors to be considered." *United States v. Brazil,* 4 M.J. 668 (A.C.M.R.1977); *United States v. Martin,* 19 M.J. at 623. All matters pertaining to his sanity must be evaluated. *United States v. Triplett,* 21 C.M.A. at 503, 45 C.M.R. at 277. One of these is the long period of time from August 1970 (when appellant completed his duty in Vietnam) until August 1982 (when the first offense occurred) during which the accused served successfully and apparently without incident in a number of different assignments (including airborne training in 1980 and special forces operations training in 1981) even though, according to the evaluations, he was suffering from PTSD continuously.

From appellant's Enlisted Evaluation Report for the period December 1983 through June 1984 (his last rating period before trial), which was admitted as a defense appellate exhibit, we note he obtained the highest possible score in every part of the report (DA Form 2166–6, Enlisted Evaluation Report). These included, among others, evaluations for adapting to changes, performing under pressure, displaying sound judgment, communicating effectively, and demonstrating initiative and self-discipline. His rater commented, "Even though faced with personal problems, this individual has continued to perform in an outstanding mode." His indorser added, "SSG Correa is an exceptional NCO who has worked diligently and selflessly inspite [sic] of adversity and personal hardship."

Additionally, we note appellant's extensive sworn testimony prior to sentencing. Notwithstanding the emotional impact of guilty findings, trial counsel's cross-examination, and the judge's questioning, appellant's testimony was lucid, detailed, rational, and coherent. This is further evidence of appellant's sanity which was apparent at trial and may be considered here. *See United States v. Martin,* 19 M.J. at 623; *United States v. Brazil,* 4 M.J. at 669.

In the post-trial evaluations, although "all three mental health professionals are consistent in diagnosing him as manifesting PTSD ...," (Clinical Report on PV1 Walter Correa, 3 July 1985), none of them states PTSD is a "mental disease or defect." [1] While the relationship of the various symptoms of PTSD to the criminal conduct charged is discussed, none of the evaluations indicate that, at the time of such conduct, as a result of PTSD, appellant lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. We also note from the clinical report that appellant's drinking history correlates with the period during which the various offenses occurred. [2] It appears appellant's criminal conduct was directly related to his problem with alcohol. [3]

Considering all of the matters submitted, we are convinced "the evidence is insufficient to raise the issue of insanity." *Unit-*

---

**1.** One of the professionals states PTSD is an "unresolved grief reaction." (Incl. 7 to Clinical Report on PV1 Walter Correa, 3 July 1985).

**2.** "3b. DRINKING HISTORY

(1) PV1 Correa drank for only two years (1982–1984) between 34 to 36 years of age. He *excessively* drank during one year but had alcohol-related problems during both years. During periods of social drinking, he drank 2–3 times per week, usually drinking one 6-pack of 12-ounce beer. During the one year of excessive drinking, he usually drank 5–6 times per week, drinking 2–3 6-packs of 12-ounce beer and one pint of liquor. He usually drank to "ease the hurt, pain, and depression within myself".

Once he started drinking, he had difficulty stopping before he was completely intoxicated (i.e., this is loss of control over the amount of drinking—one of two types of loss of control over drinking).

(2) After excessive drinking, he had these alcohol-related problems: felt aggressive or cross, got into fights, got into heated arguments, financial problems, lost friendships, hurt his chances for promotion, got "high while on the job", and conflicts with his wife and relatives due to his drinking."

**3.** Intoxication was never, either at trial or here, asserted as a defense.

*ed States v. Brazil,* 4 M.J. at 669. *See also United States v. Gay,* 16 M.J. 586, 604 (A.F.C.M.R.1983), *aff'd on other grounds,* 18 M.J. 104 (C.M.A.1984). "The post-conviction reports did not so impugn the validity of the findings of guilty at trial as to require that they be set aside." *United States v. Triplett,* 21 C.M.A. at 503, 45 C.M.R. at 277.

We have considered the other assignments of error, including those personally raised by the appellant, and find they have no merit.

The findings of guilty and the sentence are affirmed.

Senior Judge YAWN and Judge KENNETT concur.